Middleton, J.
The petitioner seriously urged in the Court of Appeals that the trial court erred in admitting testimony concerning the alleged writing executed by her, shortly after the child was born, waiving petitioner’s parental rights. The Court of Appeals considered this alleged error but did not pass upon it. That court said:
“Assuming, but not determining, that the trial judge properly admitted secondary evidence of an alleged destroyed written agreement between the parties there *575 is no evidence that petitioner could legally execute such an instrument, on the contrary there is evidence that she was but eighteen years old at the time of the alleged execution of such alleged agreement; nor is there any evidence that she abandoned, or intended to abandon, such child. ’ ’
This court is content to accept the finding of the trial court that such instrument was executed by the petitioner within a few days after the child was born, and that prejudicial error was not committed in the submission of the evidence with respect to the execution of that instrument. We also agree with the position taken by the member of the Court of Appeals who dissented that the mother, although a minor at the time of the making of the contract, was content to enjoy its benefits without disaffirmance for approximately four years after attaining her majority and that such conduct amounted to affirmance of the contract if any were necessary.
The one serious question raised is whether under present Ohio statutes the Common Pleas Court could enter an order against the petitioner in a habeas corpus proceeding and thus, for practical purposes, deny the mother the custody of her child.
In determining all questions of possession or custody of children it has long been the law of Ohio and the general law that it is the welfare of the child that is first to be considered. As early as 1855 this court held in Gishwiler v. Dodez, 4 Ohio St., 615, that, in a controversy between parents for the custody of a child incapable of electing for itself, the order of the court should be made with a single reference to the child’s best interests and that neither of the parents has any rights that can be made to conflict with the welfare of the child.
Again in Clark v. Bayer, 32 Ohio St., 299, 30 Am. Rep., 593, this court held that “in all cases of contro *576 verted right to custody the welfare of the minor child is first to be considered.”
This guiding principle has been consistently followed by the trial courts of this state to the present time. In recent years commendable legislation has been passed dealing with the care and custody of infants but in so legislating the General Assembly can not be said to have disregarded the fundamental principle above stated.
The court’s attention has been directed particularly to the following sections of the General Code:
Section 1352-12 (Section 5103.15, Revised Code) provides that a parent, may enter into an agreement with a certified child-caring institution or association for temporary care of a. child or make an agreement with such certified institution or association for the surrendering of the child into the permanent custody of such institution or association. We view that section as permissive. It authorizes the making of such an agreement but it is not exclusive.
Section 1352-13 (Section 5103.16, Revised Code) provides:
“No child under two years of age shall be given into the temporary or permanent custody of any person, association or institution which is not certified by the Division of Charities, Department of Public Welfare, as provided in Sections 1352-1 and 1352-6 of the General Code, without the written consent of the Division of Charities or by a commitment of a Juvenile Court. Provided such child may be placed temporarily without such written consent of court commitment with persons related by blood or marriage * * *.”• (Emphasis supplied.)
Section 1352-14 (Section 5103.17, Revised Code) provides:
“It shall be unlawful for any persons, organizations, hospitals or associations which have not been approved *577 and certified by tbe Division of Charities, Department of Public Welfare, to advertise that they will adopt children or place them in foster homes, or hold out inducements to parents to part with their offspring, or in any manner knowingly become a party to the separation of a child from its parent, parents or guardians, except through a Juvenile Court commitment.”
It is obvious that this section of the Code is designed to prevent the advertising of children for adoption or placement in foster homes, and the last clause of the section must be read in connection with the provisions contained in Section 1352-13, which permit the temporary placement of a child with blood relatives.
Other sections of the Code deal with adoption but adoption is not here involved.
It is the judgment of this court that the child in question immediately after its birth was lawfully placed in the home of the respondents and that the respondents legally came into possession of the child under the provisions of Section 1352-13, General Code.
It has long been the law of this state that the right to custody of a child may be forfeited through abandonment. Such was the decision of this court in Clark v. Bayer, supra. We do not believe that the law in that respect was changed by present statutory provisions. In this instance the trial court found, and we believe correctly, that the conduct of the mother amounted to abandonment of the child. Consequently, the mother’s right to regain possession of the child through a habeas corpus proceeding may be found to be forfeited. We agree with the decision and judgment of the trial court that in a habeas corpus proceeding possession of the child should not be awarded to the petitioner.
This being an appeal on questions of law and not on questions of law and fact, the Court of Appeals is bound by the finding of facts of the trial court if those *578 findings are supported by any substantial evidence. We have no difficulty in determining that the trial court’s finding of facts is amply supported by substantial evidence. The Court of Appeals, therefore, had no power to reverse the judgment and render final judgment contrary to that of the trial court. The most the Court of Appeals could have done was to reverse on the weight of the evidence and remand to the trial court.
The judgment of the Court of Appeals is reversed and the cause is remanded for further proceedings in accordance herewith.

Judgment reversed.

Weygandt, C. J., Taet, Hart, Zimmerman and Stewart, JJ., concur.
Lamneck, J., concurs in paragraphs one, two and four of the syllabus and in the judgment.